## Leone C. Johnson, Appellee, v. Lydia Luhman, Appellant.

### Gen. No. 10,215.

Opinion filed February 5, 1948. Rehearing denied March 25, 1948. Released for publication March 30, 1948.

B. JAY KNIGHT, FREDERICK H. HAYE, THOMAS A. KEEGAN, all of Rockford, for appellant.

RAPHAEL E. YALDEN, of Rockford, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

Leone C. Johnson filed her complaint in the circuit court of Winnebago county, charging Lydia Luhman with the alienation of affections of the plaintiff's husband, Vincent Joseph Johnson. The complaint alleges that the plaintiff was married to the said Vincent Joseph Johnson, and they lived together for fifteen years prior to July 1942, as husband and wife; that there had been five children born to the Johnsons, and that the husband and father had supported the family; that the husband's average yearly earning was about $5,000, which he devoted to the expense of the family home; that this was the sole income of the plaintiff's family. The complaint further alleges that for three years prior to July 1944, the defendant, Lydia Luhman, was a resident of the City of Rockford, Illinois, and would frequently visit the home of the plaintiff, and protested friendship for her; that on or about the 13th of July 1944, the defendant, Lydia Luhman, induced and enticed the said Vincent Joseph Johnson to leave his home, and the plaintiff and their children, and go to other places where he might associate with, and constantly be with the said Lydia Luhman, and caused the said Vincent Joseph Johnson to desert the plaintiff, his wife, and desert and neglect his children; that in April 1945, the plaintiff filed her suit in the circuit court of Winnebago county, for separate maintenance and temporary alimony; that a hearing was had on the petition for temporary alimony, and that there was a reconciliation between the parties, and they started to live together again as husband and wife; that later, by the solicitation, inducement and enticement of Lydia Luhman, Vincent Joseph Johnson again left his wife and family and went to live with Lydia Luhman; that later the husband returned to the plaintiff and asked her to again resume the marital relations with him, which the plaintiff did; that they lived together as man and wife for three days at which time the plaintiff became pregnant, and again the de-

fendant, Lydia Luhman, induced and enticed the said Vincent Joseph Johnson to leave his home and flee to places where he might associate with, and constantly be with the defendant, Lydia Luhman, and again to have Vincent Joseph Johnson, to desert the plaintiff; that the said Lydia Luhman, and the said Vincent Joseph Johnson have associated together, and for several months prior to the filing of the suit, had lived together in the defendant's apartment in the City of Rockford, Illinois; that during these times the said Vincent Joseph Johnson had failed to support his family, except as ordered by the circuit court of Winnebago county; that by reasons of the matters and things heretofore mentioned, and the acts and doings of Lydia Luhman, the rights of the plaintiff herein, to the support and maintenance, and the care and duty of the husband and father had been totally destroyed, and rendered valueless for all times in the future.

The complaint further alleges that during all the time the plaintiff lived with her husband, she conducted herself towards him as a dutiful, affectionate and chaste wife, and by reasons of the matters and things above alleged, and particularly by the acts and doings of the defendant, Lydia Luhman, the family life of the plaintiff to which she was normally and naturally entitled, in matters and particulars other than those of financial nature had been totally denied to her, and will continue to be totally denied to her all the rest of her life.

The defendant filed a motion to strike the complaint, and stated numerous reasons why it did not state a cause of action. This motion was overruled. The defendant filed her answer in which she denied all acts on her part, which caused the husband to desert the plaintiff and family, and also denies that she has been damaged in any way by the acts of the defendant.

The case was tried before a jury. The plaintiff offered her evidence, and rested her case. The defend-

ant offered no evidence. The plaintiff then asked leave to file an amendment to the complaint by adding the following: ''That the defendant unlawfully, wantonly and maliciously alienated the affections of Vincent Joseph Johnson from the plaintiff, and that as a result of such misconduct on the part of the defendant, the plaintiff suffered the loss, and will continue to suffer the loss of consortium of her husband.'' The defense objected to this amendment, but the court overruled the same and allowed the amendment to be made.

The Court overruled a motion of the defendant to withdraw a juror and continue the cause. The trial then proceeded, and the jury found the issues in favor of the plaintiff, and assessed her damages at $10,000. The defense entered a motion for a new trial, which was overruled by the court, and judgment for $10,000 was entered on the verdict in favor of the plaintiff. It is from this judgment that the defendant has perfected an appeal to this court.

It is insisted by the appellant, ''that the verdict is excessive against the manifest weight of the evidence was well as the law, and contrary to the public policy of the State of Illinois.'' In the recent case of *Heck v. Schupp,* 394 Ill. 296, our Supreme Court in discussing whether a suit of this kind was contrary to the public policy of the State of Illinois, used this language: ''The contract of marriage has always been known in the law as a contract involving civil rights just as other contracts involve such rights, and no reason appears why, under section 19 of article II of our constitution, such rights should not have their day in court. Moreover, as to criminal conversation and alienation of affections, these involve the rights which all members of the family have a right to protect. Not only does every member of the family have a right to protect the family relationship but the State likewise has an interest in the sacredness of the family relationship. Certainly to give a license to one who

would disrupt that relationship by tying the hands of injured members of the family, is not only clearly in conflict with section 19 of article II of our State constitution, but appears to us to be contrary to all sense of justice.''

In the recent case of *Johnson v. Luhman*, 330 Ill. App. 598, a similar question was presented to this court, and we followed the law, as declared in *Heck v. Schupp, supra*.

The evidence shows that the defendant deliberately started on a course of conduct for the purpose of alienating the affections of the plaintiff's husband. They lived together openly, as man and wife. She bought him valuable gifts and when the plaintiff went to see the defendant to try to get her to desist from her attempts to take the husband from her, she brazenly told her she did not intend to desist, but she told Mrs. Johnson that even if the husband did go back to her, she could not hold him. The evidence, which is undisputed in this case, certainly shows that the defendant was guilty of alienating the plaintiff's husband's affection. Under the circumstances, as developed by the evidence in this case, we think that the verdict of $10,000 is not at all excessive.

At the request of the plaintiff, the court gave the jury a special interrogatory as follows: ''The jury will answer the following special interrogatory by writing in the blank space, the words, 'yes,' or 'no,' as the jury may find from the evidence:'' ''Did the defendant wantonly and maliciously alienate the affections of the plaintiff's husband, as charged in the complaint?'' ''Answer ——.'' The jury answered this interrogatory, ''yes.'' The defendant insists that, by the court's submitting this interrogatory, the case should be reversed, as it does not properly state the law, and there is no evidence on which to base it. The appellant cites many cases in regard to what an instruction should contain, but it will be observed this is not an instruc-

tion, but an interrogatory for the jury to answer "yes," or "no," and the rules relative to instructions are not applicable here. We think the court properly submitted this special interrogatory to the jury. However, if it was not properly worded, the defendant could not be prejudiced thereby, as the court, in this interrogatory, did not in any way attempt to explain the law to the jury applicable to the issues involved.

After the plaintiff had introduced her evidence and rested her case, the defendant offered no evidence. Apparently this was done at the close of a court session. The next morning the plaintiff asked leave to amend the complaint by charging the defendant with wilful, wanton and malicious alienation of her husband's affections. It is now insisted that the court erred in granting the plaintiff leave to make this amendment. Paragraph 170 of the Practice Act [Ill. Rev. Stat. 1947, ch. 110, par. 170; Jones Ill. Stats. Ann. 104.046] provides: "At any time before final judgment in civil action, amendments may be allowed on such terms as are just and reasonable, . . . which may enable the plaintiff to sustain the claim for which it was intended to be brought, or the defendant to make a defense, or insert a cross-demand." Our courts have liberally construed this statute, and we think the trial court properly allowed the amendment to be filed.

Objection is made to plaintiff's given instructions Nos. 16 and 18. Appellee has called our attention to page 124 of the record, which is not abstracted, in which the court had a conference with Mr. Yalden, the attorney for the plaintiff, and Mr, Knight, one of the attorneys for the defendant, and they discussed the instructions that were tendered to the court by the parties to the suit. The court asked Mr. Knight: "Are you objecting to instruction No. 16?" To which Mr. Knight replied: "No." Then the Court: "Are you objecting to No. 18?" To which Mr. Knight replied: "No objections." Then after some further discus-

sions, the court stated: "If you object to No. 17, I will refuse it." Mr. Knight replied: "Instructions No. 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16 we are not objecting to." The court replied: "Well, I think you are bound by that." Mr. Knight: "Yes." The court again asked: "Are you objecting to 18?" Mr. Knight again replied: "I am not objecting to 18."

We have examined these instructions, and while they might be subject to some criticism, we think they fairly state the law. After consenting to have the instructions given, and finding no objections to them at the time they had the conference with the trial court, we doubt whether the appellant is in a position to raise any objection to the instructions.

When the first juror was being examined on his *voir dire*, Mr. Knight, out of hearing of the jurors, informed the court that the children of the plaintiff were in the courtroom. They were sitting back of the rail where the other spectators would sit. The court stated to Mr. Yalden, "that he saw no reason why the children should be in the courtroom," and they were taken out of the courtroom and remained in the witness room during the progress of the trial. It is now insisted that this was prejudicial error to have these children in the courtroom. We find no merit in this contention, as the pleadings admitted that the plaintiff had five children. There is no evidence that anything was done that would prejudice the jury in any way, except that the children were present in the courtroom, but they were excluded before the jury had ever been examined on their *voir dire*.

After the court had allowed plaintiff's motion to amend her complaint, the defendant introduced in evidence newspaper articles commenting on the claims of the parties in the controversy, which she claimed were highly prejudicial to her. The court allowed these articles to be filed, but not read, or taken to the jury room with the jurors. They are the usual articles

which you would expect the newspapers to carry about a sensational case of this kind. The record shows that the trial court cautioned the jurors not to read the newspaper articles in regard to the lawsuit. There is no showing that any one of them ever read, or heard of the newspaper articles. If a case should be reversed on a showing of this kind, a jury's verdict would never be final, because it is a well known fact that newspapers and radios, in practically all criminal cases, and unusual civil cases, state their versions of what happened, and generally lean towards the sensational side. Under the showing in this case we think that the newspaper articles would not justify this court in setting aside the verdict of the jury.

It is our conclusion that the defendant had a fair and impartial hearing, and the judgment of the trial court should be affirmed.

*Judgment affirmed.*