Paul Sunga, Appellee, v. Jason Lee et al., Defendants.
Appeal of Arthur Song, and Jessie Song, Appellants.

Gen. No. 46,847.

First District, Second Division.
February 19, 1957.
Rehearing denied March 12, 1957.
Released for publication April 2, 1957.

Thomas Masuda and Cherry & Morse, of Chicago, for appellants; Thomas Masuda, Leo J. Spivack and Harry G. Fins, of counsel.

Sidney S. Altman, of Chicago, for appellee.

PRESIDING JUSTICE ROBSON delivered the opinion of the court.

Defendants Arthur Song and Jessie Song appeal from a $9,000 default judgment entered against them, and from the orders of the trial court denying their motions to vacate said judgment.

Plaintiff brought an action to recover damages for personal injuries resulting from an alleged dogbite. Defendants Arthur and Jessie Song are nonresident owners of the premises where the alleged injuries occurred. Jason Lee, owner of said dog, was made a codefendant. Thomas Masuda, listed as the one who paid the taxes on the premises, was subsequently made an additional party defendant. After filing the suit, plaintiff, without notice to the other defendants, sued out a writ of attachment against Arthur and Jessie Song, residents of Honolulu, Hawaii. Personal service was not had upon the Songs, but publication and mailing of the summons was made as required in Ill. Rev. Stat. 1955, chap. 11, par. 22. The summons, which was mailed to them, was merely addressed Honolulu,

Hawaii, without any street or house number and as a result was not received by them. It was returned by the United States Post Office to the clerk of the Circuit Court marked "not found." On January 31, 1955, defendants Arthur and Jessie Song were defaulted, and the court, without a jury, entered judgment against them in the sum of $9,000 on February 4, 1955.

On May 17, 1955, attorneys for the Songs appeared specially to file a motion to vacate the judgment and quash the summons. The only ground for said motion was that the plaintiff did not make a diligent inquiry to ascertain the place of residence of Arthur and Jessie Song, as stated in the affidavit for attachment. There was a hearing on the motion, and on June 30, 1955, the trial court entered an order overruling and denying defendants' motion and directing the sheriff to proceed with the sale of defendants' property.

On July 6, 1955, defendants filed a motion for leave to file an appearance, leave to file an answer to the complaint at law, and to vacate the judgment, setting forth again that plaintiff did not make diligent inquiry as to the residence of defendants, and further alleging that defendants acted diligently and had a meritorious defense. These motions were also heard by the trial court, and on September 27, 1955, a final order was entered overruling and denying defendants' motion to vacate the judgment, and for leave to file an appearance and answer. (Defendants Jason Lee and Thomas Masuda were dismissed from the case by order of court entered July 13, 1955.)

■ On this appeal defendants assign six grounds for reversal, only one of which was specified in the trial court. This court on numerous occasions has held that an issue not raised in the trial court cannot for the first time be raised on appeal unless such issue goes to the jurisdiction. Haugan v. Michalopoulos, 280 Ill. App. 239.

■ We will consider two contentions. First, that the attachment affidavit was void because it was vague and uncertain as to whether the Songs were being sued as defendants or as garnishees and thus the court had no jurisdiction over the subject matter, and second, that plaintiff did not exercise due diligence as required by section 2 of the Attachment Act to ascertain the place of residence of the defendants. This was a default judgment and there has been no trial on the merits and therefore the judgment is based on the technique of procedure and is subject to careful scrutiny. Lichter v. Scher, 11 Ill.App.2d 441.

■ As to the first contention, it is true that an attachment affidavit must meet all the essential requirements of the statute to give the court jurisdiction over the subject matter. If an essential element of the affidavit is omitted, it may not be aided by amendment, and the proceeding is without authority of law. Martin v. Schillo, 389 Ill. 607. Such question relates to jurisdiction and may be raised for the first time on appeal. Jarrett v. Jarrett, 415 Ill. 126. The statute requires that such affidavit contain the following elements: (1) the nature and amount of the claim; (2) one or more of the statutory causes for which attachment may issue; (3) "the place of residence of the defendants, if known, and if not known, that upon diligent inquiry the affiant has not been able to ascertain the same"; (4) a statement to the effect "that the attachment action invoked by such affidavit does or does not sound in tort"; and (5) "a designation of the return day for the summons to be issued in said action." Ill. Rev. Stat. 1955, chap. 11, par. 2.

■ ■ The defect complained of relates to language creating an inconsistency by way of surplusage. The statute does not require that the word "defendants" or "garnishees" appear in the affidavit. While both these words appear in this affidavit, we do not feel that this defect substantially affects the affidavit's conformity

80

to the statutory requirements. Since all the jurisdictional elements appear in the affidavit, the defect complained of does not render the affidavit void or the court without jurisdiction. While such defect may render the affidavit voidable or subject to amendment, it does not relate to the court's jurisdiction over the subject matter, and thus cannot be raised for the first time on appeal. Erickson v. Gregory, 275 Ill. App. 286.

Defendants' second contention is that plaintiff did not exercise due diligence, as required by section 2 of the Attachment Act, to ascertain the place of residence of the defendants. That section provides that the affidavit shall state "the place of residence of the defendants, if known, and if not known, that upon diligent inquiry the affiant has not been able to ascertain the same." The attachment affidavit made by attorney for the plaintiff recites:

"And affiant further says: That the said Arthur Song and Jessie Song, are not (a) residents of this State, and that their place of residence is as follows, to-wit: City and County of Honolulu, in Territory of Hawaii: (1) That upon diligent inquiry, affiant has not been able to ascertain their exact place of residence; . . ."

Defendants argue that plaintiff's attorney could have discovered their exact address by making inquiry of their agent, Thomas Masuda, or by looking in the telephone directory of Honolulu, Hawaii; that in failing to take these steps plaintiff's attorney clearly did not conduct a diligent inquiry; and that the recitation of "diligent inquiry" in the affidavit is therefore not substantiated by the record, and the affidavit is void.

■ In the early case of Haywood v. Collins, 60 Ill. 328, our Supreme Court in discussing the action of attachment at pages 333-4 said:

"In this summary proceeding, by which the citizen is deprived of his property without actual notice; with-

81

out trial, except by an idle form; by which his entire estate may be taken in payment of a feigned indebtedness—a proceeding entirely *ex parte*—the authority for such remedy should be strictly pursued."

We must, therefore, carefully consider in view of the facts and circumstances involved in this case, whether plaintiff exercised due diligence in attempting to determine defendants' place of address. Black's Law Dictionary defines diligence as "prudence; vigilant activity; attentiveness; or care, of which there are infinite shades, from the slightest momentary thought to the most vigilant anxiety." Where diligent inquiry is required by statute, it is the duty incumbent upon the court to determine which of the "infinite shades" of care should be adopted to best fit the circumstances of a particular case. Our Supreme Court, in interpreting these words in a similar statute, has laid down an enlightened rule, which we feel is controlling in the instant case. In Graham v. O'Connor, 350 Ill. 36, at 40, 41 (1932) the court said:

"The statute is particular in enumerating the necessary steps. The phrases 'due inquiry' and 'diligent inquiry' in that statute are not intended as useless phrases but are put there for a purpose. Those two phrases have a well understood meaning that cannot be reconciled with the taking of a chance or guessing that the names and addresses of unknown parties can not be ascertained. A perfunctory inquiry does not comply with the provisions of the statute. An honest and well directed effort must be made to ascertain the names and addresses of unknown parties. The inquiry must be as full as the circumstances of the particular situation will permit. In this case the evidence shows that the defendant was a real estate dealer and at the time she obtained her tax deed was employed in the office of the county clerk of Winnebago county. The

82

record shows she is a person of more than average intelligence, and we are warranted in assuming that she understood the importance and relation of public records to land titles. It is clear that the defendant fell far short of making the 'due inquiry' and 'diligent inquiry' required by the statute."

Plaintiff asserts that he exercised due diligence. He states that Thomas Masuda, who was then one of the defendants, was subpoenaed by plaintiff for the purpose of taking his discovery deposition; that he would not answer any questions regarding the defendants; and that plaintiff was required to have the trial court enter an order requiring him to answer questions pertaining to the property involved. The trial court entered an order requiring Thomas Masuda to answer all questions required of him pertaining to the property that were "not subject to attorney-client privilege."

■ An examination of the transcript of the testimony, when plaintiff first attempted to take Masuda's deposition, reveals no question pertaining to the address of defendants. Plaintiff knew that Masuda was defendants' attorney and their agent for the purpose of collecting rent from the premises involved. While there is no case directly in point in Illinois, we are of of the opinion that the address of the client, under the circumstances involved in this case would not be subject to the rule of privilege (70 C.J. 422–3, sec. 564). He could have asked Masuda this question and required him to answer it. Plaintiff had another opportunity to ask the question at the time of the taking of the second deposition. This he did not do. We conclude that under the interpretation of due diligence as set forth in Graham v. O'Connor, supra, plaintiff should have interrogated Masuda to ascertain the street number and address of the defendants in Honolulu, Hawaii.

Further, in a large metropolitan area such as Chicago where plaintiff's lawyer practices, there are many sources of information available. This is discussed in the recent opinion of Romain v. Lambros, 12 Ill.App.2d 64 (1956), an opinion of the Third Division of this court, involving the question of due diligence. We take judicial notice of the fact that within a few blocks of plaintiff's lawyer's office, the Illinois Bell Telephone Company maintains an out-of-town directory service containing for the use of the general public the telephone directories of all the major cities of the world. The availability of this service is stated in its telephone directory. The Honolulu directory lists the name, number, and street where Arthur P. Song resides. Instead of taking any of these steps, plaintiff's attorney only, as stated in his counteraffidavit filed to the motion to set aside the judgment, "made a diligent inquiry by checking the title records, wherein he learned that the defendants signed the deed and trust deed, certified copies of which are hereto attached as Exhibits A and B, before a Notary Public in Honolulu, Hawaii." This inquiry most certainly did not meet the standards set in the Graham case.

On the basis of such a peremptory investigation, to allow plaintiff in this summary proceedings of attachment *in rem* to have a $9,000 judgment by default would be a grave miscarriage of justice. We conclude that the trial court erred in denying defendants Arthur and Jessie Song the right to file their appearance and defense in the above-entitled cause. The judgment of the trial court in the sum of $9,000 is reversed and set aside and the cause remanded for trial on the issues.

Judgment reversed and cause remanded with directions.

SCHWARTZ and McCORMICK, JJ., concur.