**Geno P. Arboit, Plaintiff-Appellant, v. Gateway Transportation Co., Defendant-Appellee.**

**Gen. No. 11,067.**

Second District, First Division.
December 18, 1957.
Released for publication January 4, 1958.

501

Berry & O'Conor, of Ottawa, for plaintiff-appellant.

Zwanzig, Thompson & Lanuti, of Ottawa, for defendant-appellee.

JUSTICE McNEAL delivered the opinion of the court.

About 12:45 A. M. on March 12, 1953 the plaintiff drove his 1951 Buick automobile in a southerly direction on U. S. Route 51 in the city of Oglesby, Illinois, and collided with the rear portion of defendant's trailer. At the time of the collision the trailer was

attached to a tractor driven by Joseph Meador. Plaintiff alleged that he was in the exercise of due care; that defendant owned the semi-truck trailer combination and by its agent and employee, Meador, negligently drove the unit at a speed less than was reasonable and proper, at such a slow speed as to impede or block the normal and reasonable movement of traffic, without proper taillights, or next to the center line of the roadway; and that as a proximate result of defendant's negligence, plaintiff sustained personal injuries, for which he demanded judgment in the sum of $103,000. Defendant answered and denied these allegations. A jury returned a verdict finding defendant not guilty and the court entered judgment in favor of defendant on the verdict. The court denied plaintiff's post trial motion for judgment notwithstanding the verdict or for a new trial, and plaintiff appealed. Plaintiff's theory on appeal is that the court erred in giving certain instructions for defendant, and that the verdict was against the manifest weight of the evidence.

U. S. Route 51 crosses the Illinois River just south of LaSalle, intersects State Route 71 at the foot of Oglesby Hill, and proceeds southerly as a two-lane concrete highway up hill at a grade of three per cent for 1,500 to 2,000 feet. The highway levels off for 200 to 250 feet, enters the city limits of Oglesby, and resumes the climb at a six per cent grade for approximately 1,000 feet to its intersection with West Mormon Street. The pavement widens to four lanes about 34 feet north of West Mormon Street and continues south from that intersection at a four and a half per cent grade about 106 feet to the East Mormon Street intersection. At the time of the collision the highway was illuminated by sodium vapor street lights. One light was at the south line of East Mormon Street and to the north there were two lights at intervals of about 150 feet, and three more lights at intervals of about 300 feet.

503

Plaintiff was alone in the car, returning to his home in Oglesby from LaSalle where he had attended a club dinner and another social function. He testified that he was served a few drinks during the evening. According to his last recollection prior to the accident plaintiff was driving his car 25 to 28 miles an hour, about a foot to the right of the center line, at a point where the two lanes widened into a four-lane highway. His lights were on dim and although he could see about 100 feet ahead, he never saw the truck at any time. The front of his car was demolished and plaintiff sustained painful and permanent injuries.

Joseph Meador testified that he was employed by defendant at the time of the trial, but on the day of the collision he was employed by Richard Stine, owner of the tractor he was driving. On March 11 Stine had leased the tractor to the defendant company which possessed the authority of the Interstate Commerce Commission for the operation of the unit involved in the collision. On that day Meador reported to the dispatcher for the defendant company at its terminal in Milwaukee. The dispatcher gave Meador written instructions with reference to the destination of defendant's loaded trailer. Meador hooked the tractor to the trailer and left Milwaukee about 6:30 P. M., enroute to El Paso, Illinois. The tractor-trailer unit was 40 feet in length and, including cargo, weighed about 32,000 pounds. On the rear of the trailer were ten red lights which were inspected on departure and at the State Weighing Station near the junction of Routes 30 and 51, about 30 miles north of Oglesby. The unit was traveling 15 to 18 miles an hour, about a foot west of the center of the two-lane portion of the highway near the West Morman Street intersection, when there was a terrific thump at the back end. Meador didn't know what had happened until he pulled to the right and then he saw plaintiff's car in the middle of the road to

his rear. He parked the unit on the west lane of the highway south of East Mormon Street. His lights were on at the time of the impact, and after the collision all were burning except three cluster lights and a combination taillight and stop light which were broken out or knocked off.

Harold Duncan testified that at the time of the trial he was employed by the defendant company, but at the time of the collision he too was employed by Stine to drive a tractor pulling a Gateway trailer from Milwaukee to El Paso, Illinois; that he followed the unit driven by Meador at a distance of 500 to 1,000 feet all the way from Milwaukee to a point 3 or 4 miles north of LaSalle where he passed Meador; that the ten lights on the back of the trailer pulled by Meador were always operating and visible to Duncan; and that he also stopped at the weighing station at the junction of routes 30 and 51, and was there when Meador checked his lights and equipment.

Plaintiff's witness, Burkett Moliske, testified that he was Light Superintendent for the city of Oglesby; that the sodium vapor lights along the highway had the peculiar characteristic of not reflecting true colors; that under such lights a red taillight appeared to be black or dark purple; and that the city of Oglesby is substituting a different kind of light for those in use at the time of the accident.

A police officer for the city of Oglesby and a tavern operator testified for the plaintiff that they were at the scene shortly after the collision and that plaintiff's car was facing south on the inner southbound lane near the extended north curb line of East Mormon Street; and that they observed no lights on the back of defendant's trailer at that time. These witnesses and the ambulance driver corroborated plaintiff's testimony that it was a foggy, misty night. Both of the truck drivers testified that it was clear and the pavement

was dry all the way from Milwaukee to Oglesby. John Thompson, who operated the wrecker which removed plaintiff's car, testified that the wrecked car was on the inner southbound lane about in line with the southwest corner of the West Mormon Street intersection; and that the truck was parked on the right outer lane at the East Mormon Street intersection.

In his brief plaintiff's primary contention is that the collision occurred near the East Mormon Street intersection or about 140 feet south of the point where the two-laned pavement widened to four lanes. Plaintiff alleged that defendant drove the unit in a lane of of traffic next to and immediately adjoining the center line of said roadway, in violation of Sec. 54, Par. 151, Sub-par. 5 (b), Ch. 95½, Ill. Rev. Stat. 1953. This section requires that a vehicle proceeding at less than normal speed be driven in the right-hand lane available for traffic or as close as practicable to the right-hand curb or edge of the roadway. However, this statute did not become effective until July after the accident happened and was not applicable to this case. Although not shown by the abstract, defendant concedes that plaintiff's allegation was amended during the trial to place this same allegation on a common law basis.

The testimony in this case was highly contradictory on many questions, including such matters as the location of the vehicles after the collision and the condition of the weather. Where the testimony is conflicting it is for the jury to determine the credibility of the witnesses and the weight to be given their testimony. Likewise it was for the jury to determine from all the facts and circumstances in evidence and upon reasonable inferences therefrom the speed of the vehicles and where they collided, whether plaintiff ran into the rear of defendant's trailer on the two or four-laned portion of the highway, whether plaintiff

506

was in the exercise of due care or guilty of negligence which proximately contributed to bring about the collision and his injuries, and whether or not the driver of the tractor-trailer unit was defendant's agent or servant at the time of the collision and was guilty of any negligence which proximately caused the collision. On either of these questions of fact we think there was competent evidence to support the jury's verdict adverse to plaintiff's contentions and in favor of the defendant. The trial court denied plaintiff's post trial motion for a new trial and permitted the verdict to stand. The ruling of a trial court on a motion for a new trial will not be disturbed on appeal unless there was a clear abuse of discretion (Thomas v. Weber, 14 Ill.App.2d 562, 564).

■■ It is not the province of this court to substitute its judgment for that of a jury unless its verdict is against the manifest weight of the evidence. To be against the manifest weight of the evidence requires that an opposite conclusion be clearly evident. Niman v. Pecatonica Livestock Exchange, 13 Ill.App.2d 144, 151; Ritter v. Hatteberg, 14 Ill.App.2d 548, 555. We cannot say that the verdict is against the manifest weight of the evidence in this case.

The court gave thirteen instructions offered by plaintiff and eighteen of twenty-five instructions tendered by defendant. On appeal plaintiff contends that the court erred in giving defendant's intructions No. 1, No. 4 through No. 14, and the last or eighteenth instruction given for defendant, referred to herein as No. 18. Plaintiff argues that these instructions were peremptory and unduly emphasized the question of contributory negligence. Defendant's position is that these instructions have been approved by courts of review, pertained to different subject matters, and were not repetitious; that plaintiff specifically or by inference waived objection to a number of the instruc-

tions; and that the objections now urged were not set forth in plaintiff's post trial motion and are made for the first time here.

At an extended conference on instructions shown by an additional abstract of 34 pages of the record, the court referred to defendant's instructions and said: "Is there any objection to Instruction No. 1?" Mr. Berry, one of plaintiff's attorneys, replied: "I don't think there is anything seriously wrong with it." The court read No. 10 and said: "Any objection to that?" Mr. Berry replied: "I don't believe so." The court read No. 13 and Mr. Berry said: "Well, I don't believe I have much objection to that." Having stated that he had no objection to defendant's instructions 1, 10 and 13, plaintiff is precluded from raising any objection to those instructions, either in the trial court or on appeal. Johnson v. Luhman, 333 Ill. App. 418, 425; Thomas v. Weber, 14 Ill.App.2d 562, 565.

Defendant's No. 4 instructed in substance that plaintiff could not recover at all in this case unless the jury believed that he had proved certain propositions: (1) that plaintiff was exercising ordinary care, (2) that defendant was guilty of negligence as charged, and (3) that such negligence was the proximate cause of plaintiff's alleged injuries. The court read the instruction and Mr. Berry suggested that the words "at all" should be deleted, and that the phrase "of one or more acts" be inserted in the second proposition. The court accepted the latter suggestion and gave the instruction. The court asked: "What is the matter with 5?" Mr. Berry replied: "This defendant's instruction 5, the only objection I have, it is practically a duplication . . . of one of the previous ones about preponderance of the evidence . . . ." Mr. Berry read the sixth instruction, the court read the instruction, and counsel said: "Well, that is practically a duplicate again of the other two on burden of proof."

508

■ Instruction No. 7 reads as follows:
"The law places upon all persons the duty of exercising reasonable care to avoid injury, and even though the jury should believe, from the evidence, that the defendant was negligent and the plaintiff, Geno P. Arboit, was injured thereby, if the evidence also shows that the injury could have been avoided by the exercise of ordinary care by the plaintiff, and that the plaintiff did not exercise such care, you should find the defendant not guilty." After the court read the instruction, Mr. Berry objected that "An instruction like that is not proper where there is evidence of poor visibility and weather conditions." The court commented: "Well, of course, the defendant is entitled to instructions upon his theory of the case." Mr. Berry said: "Yes, that is true. Further, we don't think that instruction properly states any proper rule of law; it is ambiguous. . . . . I object to that wording—'would have been avoided by the exercise of ordinary care.' I don't think that is a proper statement of the rule in that form." Two of defendant's witnesses had testified that the weather was clear and the pavement dry. It was for the jury to say what the evidence showed as to visibility and weather conditions. Each party had a right to have the jury instructed upon his theory of the case. In support of his theory that there was evidence of poor visibility, plaintiff's instruction 9 told the jury: "All. that was required of him was the exercise . . . of ordinary care in view of the facts and circumstances shown by the proof; and what ordinary care is depends upon the circumstances of each particular case."

After the court read instruction 8, Mr. Berry commented: "It is a duplicate of several others that he has given." Instruction 9 recited the language of the statute pertaining to speed greater than reasonable and proper and instructed that if the jury believed from

509

the evidence that plaintiff was driving at a greater speed than reasonable and proper and thereby contributed to the accident, then the jury should find defendant not guilty. The court said he was more inclined to give this instruction than a previous one which he refused. Mr. Berry said: "Well, yes, I think, however, the same objection applies to it."

The court read defendant's instruction 11 pertaining to proximate cause. Mr. Berry said: "I object to that portion, to the words 'immediate or the real cause.' It should just read 'the proximate cause of the accident in question', both in the middle and in the next to the last line. 'Immediate or moving' cause in the last line should be stricken out, I think, so it reads just 'the proximate cause of the accident in question.' 'Immediate cause'—I don't think there is any such term known in law as that as the proper test." The court replied: "I am striking out 'immediate or the real' cause and 'immediate or moving' cause of the accident. . . ."

■■ The court read instruction No. 12 as follows: "You are instructed that unless you believe from the evidence that some agent, servant or employee of the defendant, Gateway Transportation Company, was guilty of some negligent act as charged in the complaint which contributed to the accident, the plaintiff, Geno P. Arboit, cannot recover against the defendant . . . ." The court said: "I don't see anything wrong with that." Mr. Berry responded: "I don't either. Here is the only thing I see wrong . . . . It might be a negligent omission as well as a negligent act." Plaintiff is in no position to complain of this omission. His instruction No. 11 is subject to the same defect, if any, in referring only to the negligent "acts of said employee." Further the omission of negligent omissions from instruction 12 could not have confused the jurors because defendant's No. 17 told them to consider the

510

instructions as a series, plaintiff's No. 1 set forth in detail the eight negligent acts or omissions alleged in the complaint, and plaintiff's No. 10 directed a verdict for plaintiff if he proved that defendant was guilty of one or more of the negligent acts or omissions charged in plaintiff's complaint.

■ ■ Plaintiff now contends that defendant's instructions numbered 4 through 9, and 11 and 12 were peremptory in form or repetitious with reference to contributory negligence. We are fully in accord with the views expressed by this court in Baker v. Thompson, 337 Ill. App. 327, and by other Appellate Courts, condemning the practice of giving an excessive number of peremptory instructions, and in a proper case we would not hesitate to reverse a judgment rendered on a verdict procured by such practice. In the instant case, however, the record fails to show that the trial court was ever apprised of plaintiff's contentions here that such instructions were peremptory in form or repetitious with respect to contributory negligence. Such contentions were not called to the trial court's attention by plaintiff's objection that an instruction duplicates several others, or duplicates others on burden of proof or preponderance of the evidence. By making certain objections and aiding the court in rewording several of these instructions, we believe that plaintiff's attorney implied that he had no other objections and encouraged the court to give these instructions subject only to the objections made. Except for the objections made at the conference, it is our opinion that plaintiff's attorney consented to these instructions by implication and that he cannot now complain of alleged errors which he induced the court to make (City of Waukegan v. Stanczak, 6 Ill.2d 594, 608; Thomas v. Weber, 14 Ill.App.2d 564, 565), or which he raises for the first time on appeal (Sunga v. Lee, 13 Ill.App.2d 76, 79). As to objections made to these in-

511

structions at the conference, we think that the trial court's rulings thereon were correct.

When the court read defendant's instructions No. 14 and No. 18 at the conference, plaintiff's attorney made no comment or objection. In Biggerstaff v. New York, C. & St. L. R. Co., 13 Ill. App. 85, 91, the court said: "We are convinced that it is the duty of an attorney, who feels that there is no evidence to support a requested interrogatory or that for any reason such interrogatory should not be given or should be modified, to make his position known before the interrogatory is submitted to the jury. . . . Counsel cannot sit idly by and permit interrogatories, even though they are erroneous, to be submitted to the jury and then be given the advantage of properly predicating error thereon by urging it in a motion for a new trial." In our opinion the views of the Appellate Court, First District, pertaining to the preservation of errors in connection with the submission of interrogatories under section 65 of the Civil Practice Act [Ill. Rev. Stats. 1957, ch. 110, § 65] are equally applicable to the settlement of instructions required by section 67 (3) of said Act. We cannot consider plaintiff's objections to instructions 14 and 18.

We find no reversible error in the rulings of the trial court. The judgment of the Circuit Court of LaSalle county is affirmed.

Judgment affirmed.

DOVE, P. J. and SPIVEY, J., concur.