Louis Ruggiero et al., Plaintiffs-Appellees, v. Public Taxi Service, Inc., Defendants-Appellants.

(No. 58002;

First District (5th Division)—December 28, 1973.

Irvin Tischer, of Chicago, for appellants.

Baskin, Server, Berke & Rosenbloom, of Chicago, for appellees.

Mr. PRESIDING JUSTICE DRUCKER delivered the opinion of the court:

Plaintiffs, Dorothy Ruggiero, as the administratrix of the estate of Louis Ruggiero, and Richard Bertucci, sued for personal injuries sustained as the result of an automobile collision between the car they were riding in and a taxicab of defendant Public Taxi Service, Inc., which was being driven by the codefendant, Samuel Abrahams. Ruggiero died during the pendency of the litigation from causes other than injuries received in the accident. Defendants' motion for a directed verdict at the close of all the evidence was denied, and the jury returned a general verdict for plaintiffs, upon which the court entered judgment. The jury also answered "yes" to a special interrogatory asking, "Were the defendants, Sam Abrahams and Public Taxi Service, Inc., guilty of negligence which proximately caused the alleged injuries of the plaintiffs?" Defendants' post-trial motion to set aside the answer to the special interrogatory, for judgment notwithstanding the verdict, or for a new trial were all denied.

Defendants contend: (1) the trial court erred in denying their motion for a directed verdict at the close of all the evidence; (2) the answer to the special interrogatory was against the manifest weight of the evidence; (3) the trial court erred in its rulings on certain instructions; and (4) the trial court placed a greater burden on defendants than that of ordinary care in the operation of their motor vehicle.

Defendants allege by way of an affirmative defense that immediately

prior to the collision with plaintiffs' auto, and while Abrahams was waiting in his taxicab for a red light, he was attacked by two unknown assailants and as a result of this attack his vehicle was caused to enter the intersection and collide with plaintiffs' automobile.

At trial Abrahams was called to testify under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1955, ch. 110, par. 60): The accident occurred on July 29, 1967, between 5:30 and 6:30 P.M., and while there was still daylight. It was bright and clear, and the pavement was dry. The cars collided at the intersection of Clark Street and Wacker Drive. Clark is a one-way street going south, and Wacker has three lanes going west and three lanes going east. He stopped for a red light at the intersection and in the middle of Clark. He did not recall which lane plaintiffs' car was in but knew it was going west on Wacker. He could not remember if the light was red as he entered the intersection, but the last time he noticed the light for south bound traffic on Clark, before the accident happened, it was red. His cab struck the right rear side of plaintiffs' car.

Bertucci testified that he was a passenger in Ruggiero's car, sitting in the right hand seat, while the car was travelling west on Wacker. The car was in the center lane nearest the island, rather than out near the curb. Up until the time of the accident the traffic light for traffic going west on Wacker was always green. A flash second before the actual impact took place, he saw the cab. It was in the middle of the intersection headed south. At this time the light was still green for west bound traffic. There were no other occupants in the cab except for the cab driver. In this flash second he noticed nothing unusual with respect to the doors of the cab. Then the right rear fender of plaintiffs' car was struck. After the accident, he was present when Ruggiero and Abrahams had a conversation. When Ruggiero asked Abrahams what had happened and didn't he see the light, Abrahams had responded that "someone was chasing him."

Abrahams again took the stand and testified in his own behalf: While he was stopped waiting at the red light, the two front doors of his cab were opened by two unknown men. He was punched on the left side and fell to the right side of the cab. Later he was punched on his right side. As a result of this attack he became dizzy and was stunned. He didn't remember anything until he heard a crash. He then woke up and found he had hit another car in the intersection. When he woke up, the men were still hitting him. This continued for a few seconds until the men ran away. After the accident, he exchanged information, names and licenses with either Bertucci or Ruggiero. For the period that he was knocked out he lost all control of his senses. A half hour later, when the

police arrived, he had regained his senses. He never saw the two assailants get out of their vehicle nor had he ever seen them before.

Albert Sherwood testified for defendants that he saw two men in an Oldsmobile chase defendants' cab; they stopped his car and swore at him. This incident had occurred a short time before and a few blocks north of where the accident in question took place. He followed these two men as they drove south on Clark toward Wacker, but after Abrahams and the car with the two men passed the intersection at Illinois and Hubbard, he had to stop for a red light. He saw the driver of the Oldsmobile open defendants' car door and saw Abrahams way over to the right side of the cab, but did not see the accident between plaintiffs' car and the cab.

On cross-examination it was brought out that Sherwood is also a cab driver and knew Abrahams before the accident. He stated that the cab was never in the line of traffic for cars going west on Wacker although some part of the cab was out in Wacker. When he drove up to the intersection, the collision had already taken place. The right front fender of plaintiffs' car was damaged.

To impeach Bertucci defendants brought in a court reporter who had taken his discovery deposition. In this deposition Bertucci had been asked, "Did you see the other vehicle before the accident happened?" and had responded "no." Defendants also introduced the deposition of Ruggiero who stated that after the accident he saw a man by the left door of the cab throw a kick at Abrahams.

OPINION

■■ Defendants contend that because they raised an "uncontroverted affirmative defense" of an assault upon Abrahams, the trial judge, without more than a mere denial by plaintiffs and as a matter of law, should have directed a verdict in their favor. The controlling standard, which both plaintiffs and defendants agree control this issue, is that "* * * verdicts ought to be directed * * * only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.,* 37 Ill.2d 494, 510, 229 N.E.2d 504.

The direction of a verdict was not mandated when the evidence of defendants' affirmative defense stood unrebutted. Even where testimony is uncontroverted, inconsistent inferences and conclusions may be drawn, thereby making the question one for the jury. As was stated in *Ladd v. Ruck,* 108 Ill.App.2d 379, 382-3, 248 N.E.2d 147:

> "* * * [P]laintiff insists that only one conclusion is warranted from the evidence, * * *. This assertion is based on plaintiff's

view that because defendants offered no evidence as a defense to plaintiff's claim or in opposition to the evidence of plaintiff, no controverted issue existed or could exist. Plaintiff believes this position to be supported by Pedrick v. Peoria & Eastern R. Co., supra, a position with which we do not agree. Facts may be undisputed or a defendant may have failed to introduce evidence in his behalf but it does not follow that issues are therefore uncontroverted. Undisputed facts may give rise to different reasonable inferences to be drawn therefrom. Genck v. McGeath, 9 Ill.App.2d 145, 132 N.E.2d 437. The question also arises as to whether undisputed facts do or do not tend to prove or disprove the issues in controversy. The Pedrick rule does not require that verdicts be directed   *   *   *   merely because a defendant has failed to introduce evidence in his own behalf or has failed to dispute facts presented by the plaintiff."

Although Abrahams' testimony of the assault upon him was not directly controverted and was partially corroborated, there was no direct testimony demonstrating how the taxicab was propelled into the intersection. Sherwood did not see the accident and Abrahams didn't remember what happened. Therefore, as to this crucial point, the court was left to make an inference. Also, contrary to defendants' assertion that it is undisputed that this alleged assault was the proximate cause of the accident, a review of the record reveals inconsistencies in the evidence which necessitated a finding by the jury.

Positive direct testimony may be contradicted and discredited by circumstantial evidence, discrepancies, omissions or the inherent probability of the testimony. (*Legerski v. Nolan*, 132 Ill.App.2d 51, 54, 265 N.E.2d 696; *Lobravico v. Checker Taxi Co.*, 84 Ill.App.2d 20, 228 N.E.2d 196.) Abrahams and Sherwood testified that the assailants opened the doors of the cab and were hitting Abrahams, both before the accident and up until a few seconds after the accident. Bertucci, on the other hand, said he saw nothing unusual about the doors of the cab just an instant before impact, and that Abrahams was the cab's sole occupant. Bertucci also testified that in a conversation shortly after the accident Abrahams gave as an explanation for this occurrence that he was being "chased," not that he was being attacked. Part of Bertucci's testimony was impeached by a prior deposition, but this just created an issue of credibility.

The testimony of Sherwood must also be viewed for its inherent probability. He admitted he knew Abrahams before the accident and was also a cab driver. He admitted he lost sight of the cars for a period of time and did not arrive at the intersection until after the accident. He testified that Abrahams' cab was only partially into the intersection and

that plaintiffs' car's right front fender was damaged, both statements being contradicted by the other testimony and the physical evidence presented.

■■ The evidence, when viewed in the light most favorable to plaintiffs, does not conclusively show that only one inference as to what propelled the cab into the intersection is possible. Without going extensively into all the possibilities, it could be inferred that Abrahams drove into the intersection because he was being chased and not because he was knocked unconscious, or that defendants' theory of an assault could be disbelieved entirely and just careless driving caused the accident. Certainly there was no error when the trial judge found that the evidence was not so overwhelming in favor of defendants that the contrary verdict and interrogatory could not stand.

Defendants assert that the jury's response to the special interrogatory finding defendants guilty of negligence which proximately caused the alleged injuries of the plaintiffs was contrary to the manifest weight of the evidence and therefore should be set aside. They argue that the producing force causing the collision was the assault and battery and that there was no testimony adduced to show any negligence on the part of the defendants. They also argue that this verdict resulted from jury confusion due to the giving of certain instructions.

■■ The answer to a special interrogatory will not be set aside unless it is contrary to the manifest weight of the evidence. (*Klein v. Pritikin,* 6 Ill.App.3d 323, 285 N.E.2d 457.) "To be against the manifest weight of the evidence requires that an opposite conclusion be clearly evident. *Arboit v. Gateway Transp. Co.,* 15 Ill.App.2d 500, 146 N.E.2d 582. 'Manifest' means clearly evident, clear, plain, indisputable. *Schneiderman v. Interstate Transit Lines, Inc.,* 331 Ill.App. 143, 72 N.E.2d 705." *Houston v. Leyden Motor Coach Co.,* 102 Ill.App.2d 348, 352, 243 N.E.2d 293.

■■ It can be inferred from the evidence that the taxicab entered the intersection against a red light. It could also be inferred that the cause of the vehicle being propelled into the intersection was something other than the alleged assault upon Abrahams. Therefore, we cannot say that an opposite conclusion is clearly evident, clear, plain or indisputable. It was for the jury to decide controverted questions of fact or the inferences therefrom, and we will not disturb its determination. Nor was jury confusion evident. The answer to the special interrogatory was consistent with the general verdict in favor of plaintiffs.

■■ Defendants next argue that the trial judge erred in certain of its rulings on the instructions given to the jury. They first argue that it was error to give the last two sentences of plaintiffs' instruction No. 9 (I.P.I. 15.01). This instruction reads:

"When I use the expression 'proximate cause,' I mean any cause which, in natural or probable sequence, produced the injury complained of. *It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury."* (Emphasis supplied.)

Defendants aver that the "affirmative defense which stands unrefuted shows only one cause, that of the assault and battery upon the cab driver," and therefore the giving of the indicated sentences of the instruction contravenes the Notes on Use to I.P.I. 15.01, which state:

"This instruction in its entirety should be used only when there is evidence of a concurring or contributing cause to the injury or death (other than acts or omissions of the plaintiff). In cases where there is no evidence of a concurring or contributing cause, the short version without the bracketed material should be used."

In the Comment to I.P.I. 15.01, it is stated:

"An instruction encompassing the bracketed material is proper in litigation where there is evidence that something or the acts of someone other than the negligence of the defendant, or intoxication of a person who has been sold or given intoxicants, was a proximate cause of the injury or death. [Citations.]"

As we have already pointed out in this opinion, the alleged assault and battery may not have been and, as could have been found by the jury, was not the sole proximate cause of the injury. Since defendants have argued and attempted to prove that these alleged acts of third persons proximately caused the injury, and since one inference the jury could have made was that these alleged acts contributed to the injury, it was entirely proper for the court to give the entire instruction. *Galluccio v. The Hertz Corp.,* 1 Ill.App.3d 272, 274 N.E.2d 178.

■■ Defendants also argue in the alternative that either plaintiffs' instruction No. 16 (I.P.I. 12.05) should not have been given, or that the second paragraph to this I.P.I. instruction should have been given. The instruction as given recited:

"If you decide that the defendants were negligent and that their negligence was a proximate cause of injury to the plaintiffs, it is not a defense that something else may also have been a cause of the injury."

In urging that it was error to give this instruction, defendants again argue that the sole proximate cause of the accident was the assault and battery. We have already discussed this point and feel that since the jury could have found Abrahams guilty of negligence which was a proximate cause of the injury and yet also have determined that this

alleged assault and battery played a part in the accident as a proximate cause also, the giving of this instruction was proper.

■■■ Defendants further urge, alternatively, that the second paragraph of I.P.I. 12.05 should have been given. This paragraph states:

"However, if you decide that the sole proximate cause of injury to the plaintiff was something other than the conduct of the defendant, then your verdict should be for the defendant."

With this contention we agree because the jury could have found that the sole proximate cause of the accident was the alleged attack on Abrahams. In *French v. City of Springfield,* 5 Ill.App.3d 368, 374-75, 283 N.E.2d 18, the court in approving this second paragraph, stated:

"A defendant has the right, not only to rebut evidence tending to show that its acts are negligent and the proximate cause of claimed injuries, but also has the right to endeavor to establish by competent evidence that the conduct of a third person, or some other causative factor, is the sole proximate cause of plaintiff's injuries, and if the evidence is sufficient the defendant is entitled to an instruction on his theory of the case. (*Hack v. New York, Chicago and St. Louis R.R. Co.,* 27 Ill.App.2d 206, 225, 169 N.E.2d, 372.) This proposition, long recognized in the law of this State, was embodied, at the time of this trial, in I.P.I. Instructions 12.04 Revised and 12.05 Revised. * * * The following language contained in I.P.I. 12.04 Revised, 'However, if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant', has been expressly approved in *Beccue v. Rockford Park District,* 94 Ill.App.2d 179, 195, 236 N.E.2d 105."

(See *Miyatovich v. Chicago Transit Authority,* 112 Ill.App.2d 437, 251 N.E.2d 345; *Downs v. Camp,* 113 Ill.App.2d 221, 252 N.E.2d 46.) While we agree that it was error to refuse to give this part of the instruction, we do not find it to be reversible error.

■■■ The test to be applied in considering instructions is whether the instructions considered as a whole and read as a series are sufficiently clear so as not to mislead and whether they fairly and correctly state the law. A deficiency in one instruction may be cured by another. *Nowak v. Witt,* 14 Ill.App.2d 482, 144 N.E.2d 813; *Thompson v. Weible,* 19 Ill.App.2d 422, 154 N.E.2d 71.

The second paragraph of I.P.I. 12.05 requires a verdict for defendant if it is shown that the sole proximate cause of injury to the plaintiff was something other than the conduct of the defendant. The jurors, as discussed above, were properly instructed as to the definition of proximate

cause. Defendants' instruction No. 11, which was given, informed the jurors that plaintiffs had the burden of proving, *inter alia*, "* * * that the negligence of the defendants was a proximate cause of the injuries to the plaintiffs." They were also instructed that, "If, on the other hand, you find from your consideration of all the evidence, that any one of the propositions the plaintiff is required to prove has not been proved, or that the defendants' affirmative defense has been proved, then your verdict should be for the defendants." Thus the jury was told that if they found Abrahams' conduct was not a proximate cause of plaintiffs' injuries, they must rule for defendants. This, in essence, gives the jury the same information as the second paragraph would have given them.

Another factor in our decision on this issue is the finding of the jury on the special interrogatory. Since the jury specifically found that defendants were negligent and that their negligence proximately caused plaintiffs' injuries, any claimed harm produced by the omission of this second paragraph was removed. *Schmalzl v. Derby Foods, Inc.*, 341 Ill.App. 390, 94 N.E.2d 86.

The instructions adequately stated the law in this area and were not confusing. We find no reversible error in the trial judge's rulings. We have also reviewed defendants' other contention and find it to be without merit.

The judgment will be affirmed.

Affirmed.

ENGLISH and LORENZ, JJ., concur.