CHARLES PEARSON, Plaintiff-Appellee, *v.* FORD MOTOR COMPANY, Defendant-Appellant.

(No. 59490;

First District (4th Division)—September 10, 1975.

*Rehearing denied October 8, 1975.*

Baker & McKenzie, of Chicago (Francis D. Morrissey, Michael P. Connelly, and Edward J. Zulkey, of counsel), for appellant.

Fohrman, Lurie, Holstein, Sklar & Cottle, Ltd., of Chicago (Robert A. Holstein, of counsel), for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

Plaintiff, Charles Pearson, brought this action to recover damages for injuries sustained when he was struck by a ladder which fell from a tractor while he and others were unloading it from a rail car. At the close of plaintiff's case, defendant, Ford Motor Company, moved for a directed verdict and said motion was denied. Ford elected to stand on its motion for a directed verdict and presented no evidence in its defense. The jury returned a verdict for plaintiff in the sum of $5000 and Ford appeals from the entry of judgment in that amount.

Ford first contends that the court erred in failing to direct a verdict in its favor, citing *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494. It argues that plaintiff failed to make out a *prima facie* case of negligence in that there is no evidence Ford was guilty of any negligent act or omission or that any negligent act or omission of Ford was the proximate cause of plaintiff's injury.

The record establishes that on the morning of August 27, 1968, plaintiff reported to work at the Calumet Harbor Terminals where he had been employed as a laborer for several years. At approximately 8 o'clock in the evening, plaintiff was working as a part of a nine-man gang. He testified that there were four pieces of farm machinery to be removed from a rail car. He explained that these machines were unloaded by the following procedure. Four men would hook up the machine and place slings

around each wheel. At the direction of a signalman, the crane operator would hoist the machine. The remaining members of the gang would steady the machine as it was raised or lowered, and then unhook it. Plaintiff was one of the persons responsible for unhooking the machines. He testified that the first three machines were unloaded without incident. However, as the fourth machine was lowered by the craneman, a ladder fell from it. The ladder struck plaintiff squarely on the head causing the injuries for which this suit was brought. Plaintiff testified that the machines were marked "Ford." They were new. He described them as being four-wheeled, 20 feet long and 10 feet high. When asked who owned the machines, he replied that he imagined they were owned by Ford.

On cross-examination he testified that he did not know where the rail cars came from, whether the rail cars were marked "Ford," whether the machines had come in on a ship, where they were going, or whether the machines had already been sold to someone else. He stated that he did not know who had secured the ladders with wire on the other three machines.

Terrano Butler testified for the plaintiff and stated that he was the signalman on the day of the accident. He said that he unloaded five or six of the machines during the day, but that plaintiff did not work with him on all those machines. The machines were marked "Ford" at the back of each side, and were green in color. He stated that except for the machine in question, the ladders on each tractor were tied down with wire. The ladder that fell and struck plaintiff was not wired down. On cross-examination he testified that there were markings on the rail. cars, but that he did not remember seeing the name Ford on them. He did not know who put the tractors on the rail cars, nor where they came from.

● 1  Plaintiff offered no further evidence with regard to the issue of liability. Undoubtedly, the evidence was presented in a skimpy fashion, and a degree of uncertainty lies as to whether Ford committed any negligent act. However, our only inquiry is whether the evidence was sufficient to withstand a motion for a directed verdict. A motion for a directed verdict should be granted only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict and judgment based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.,* 37 Ill.2d 494.

As Ford points out, before any negligence may be imputed to a defendant, there must have been a duty owed by it to the plaintiff; and such a duty extends no further than the defendant's right, power and authority to perform it. Ford submits that the mere fact that the machine bore the

trademark "Ford" is insufficient evidence that it was the owner of the machine or that the machine was under its control; and consequently Ford argues that plaintiff has failed to establish any duty owned by Ford to him. Ford further contends no evidence was produced to establish that Ford, or someone under its direction and control, committed the negligent act which was the proximate cause of plaintiff's injuries. Defendant stresses that beyond a few limited observations, neither plaintiff nor his witness had any knowledge concerning the origin, destination, maintenance, ownership or control of the machine. Moreover, plaintiff produced no documentary evidence relating to such matters.

Although the evidence was skeletal at best, we believe plaintiff presented a *prima facie* case of negligence. It is axiomatic that a finding of negligence may be founded on circumstantial evidence alone. (*Paolinelli v. Dainty Foods Manufacturers, Inc.*, 322 Ill.App. 586, 54 N.E.2d 759.) The sole limitation on the use of circumstantial evidence is that inferences drawn therefrom must be reasonable. (*Gearhardt v. American Reinforced Paper Co.*, 244 F.2d 920 (7th Cir. 1957)) In *Bosco v. Boston Store of Chicago*, 229 Ill.App. 564, it was held that the name of a mercantile establishment on the side of a commercial hauling truck leads to the presumption that the truck is owned; operated and managed by said establishment. Yet it is obvious that a name on the side of a truck is merely circumstantial evidence and does not exclude the possibility that the truck is not owned, operated and managed by the establishment named on the side of the truck. The law wisely does not demand that the evidence exclude all other possible conclusions. Thus, it is of little import that the jury could have concluded Ford was not responsible for securing the ladder or that Ford was not the owner of the machine in question, provided of course that its conclusion to the contrary was a reasonable inference from the evidence.

The uncontested evidence shows that the machine bore only the name of Ford. It was new. The ladder on each of the other machines was secured with wire. The ladder that struck plaintiff was not. The evidence further shows that this machine, as well as other identical machines, was in the process of being shipped. We believe such circumstances create a rebuttable presumption that Ford owned and controlled the machine, that Ford owed a duty to secure the ladder, and that Ford's failure to do so proximately caused plaintiff's injuries. If Ford desired to challenge the issue of ownership, control or duty, it would have been a simple matter to produce evidence to support such a contention, if in fact it were meritorious. We hold that the lower court properly denied Ford's motion for a directed verdict.

Ford argues that the decision of the lower court stands for the novel

proposition that evidence of trademark and recent vintage of a machine, standing alone, are sufficient to establish a manufacturer's liability in an action for negligence. They state that such a result is analogous to holding General Motors liable for any automobile accident involving a Chevrolet. The analogy is manifestly inapt. Obviously, in the case of an ordinary automobile accident no presumption issues as to any negligence by the manufacturer. The fact that the vehicle was in private use would lead to the logical inference that ownership had been transferred and control relinquished. However, such are not the circumstances in the case at bar. The evidence shows more than the fact that the machine was new and that it was marked "Ford. The machine was on a rail car at a major commercial terminal. Furthermore, it was not being shipped alone, but rather it was being shipped with several other new identical machines. These facts do not indicate that ownership and control had been transferred. They more strongly suggest the contrary.

■■ Ford next contends that the court erred in holding as a matter of law that plaintiff was not guilty of contributory negligence. It is argued that inasmuch as plaintiff had unloaded three identical machines prior to the incident and was aware that the ladders on those machines were tied down only with wire, a question of fact arose as to whether plaintiff exercised due care for his own safety when unloading the fourth machine. Certainly plaintiff was not in control of the machines or the ladders wired to them. Under the circumstances he had a right to rely on the belief that the ladders would be so attached. It is well established in Illinois that the question of contributory negligence may be decided as a matter of law. (*Smith v. Bishop*, 32 Ill.2d 380.) And we hold that the court did not err in so doing here. The record is devoid of any evidence from which an inference legitimately could be drawn that plaintiff was in any manner contributorily negligent.

■■ Lastly, Ford contends that improper argument by plaintiff's counsel and the admission of improper testimony created prejudice and sympathies in the mind of the jury which deprived defendant of a fair trial on the issue of liability and resulted in an excessive verdict for plaintiff. In his opening statement, plaintiff's counsel informed the jury that plaintiff was married and had five children. Defense counsel's objection was overruled. Thereafter, during direct examination of plaintiff, he was asked if he were married and had children. Plaintiff responded over objection that he was married and had five children. This occurred subsequent to the appearance of Terrano Butler as plaintiff's witness. Butler had been asked whether he was married and had any children, to which an objection was made and sustained.

Evidence of domestic circumstances of the parties is highly prejudicial

as well as irrelevant where the only damages sought are compensable. In *McCarthy v. Spring Valley Coal Co.*, 232 Ill. 473, the statement to the jury that plaintiff had a wife and five children was held to be error. We hold the same is true here.

On the issue of damages, the parties stipulated to medical expenses in the amount of $81 and lost earnings of $504. Plaintiff's counsel asked the jury to award the sum of $4335. The jury returned a verdict in the amount of $5000. In view of the circumstances we are in accord with defendant that disclosure of plaintiff's domestic situation may have resulted in an excessive verdict. However, we reject the claim that this information in any way affected the question of liability. Under these facts we reverse and remand the cause on the question of damages only. In all other respects the judgment is affirmed.

Affirmed in part and reversed in part and remanded on the question of damages only.

DIERINGER, P. J., and JOHNSON, J., concur.