DANETTE DEE HARTNESS, Plaintiff-Appellee, v. KATHERINE RUZICH, d/b/a KaJo's Tavern, Defendant-Appellant.

Fifth District No. 5—85—0455

Opinion filed April 27, 1987.—Rehearing denied June 25, 1987.

---

[1]Justice Karns replaces Justice Jones, who retired after the cause was taken under advisement.

JONES, J., dissenting.

Thomas E. Hildebrand, of Brandt, Slate & Hildebrand, of Granite City, for appellant.

Thomas H. Boswell, of Mitchell, Brandon & Schmidt, of Carbondale, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff Danette Dee Hartness commenced this action under the Dramshop Act (Ill. Rev. Stat. 1981, ch. 43, par. 135) against defendant Katherine Ruzich, doing business as KaJo's Tavern, for personal injuries arising out of a May 9, 1982, collision between plaintiff's automobile and one driven by James Watson, the alleged intoxicated person. A Williamson County jury returned a verdict of $50,000 in favor of plaintiff. The trial court entered judgment in favor of plaintiff for $15,000, the statutory limit on damages.

On May 9, 1982, at about 10:10 p.m., Watson drove his southbound automobile across the center line of Route 37 just north of Marion and into the path of a northbound auto in which plaintiff was a passenger. Plaintiff was injured and her fiance killed in the resulting collision.

■ To recover under the Dramshop Act, a plaintiff must prove the defendant caused the intoxication by giving or selling intoxicating liquor. (Ill. Rev. Stat. 1981, ch. 43, par. 135.) Under the current provisions a defendant must have caused intoxication and not merely furnished a negligible amount of liquor. (*Kingston v. Turner* (1987), 115 Ill. 2d 445, 457.) The principal issue on appeal is whether plaintiff presented a *prima facie* case for recovery sufficient to withstand defendant's motion for a directed verdict at the close of plaintiff's evidence. Defendant argues plaintiff failed to prove defendant caused Watson's intoxication. Plaintiff argues she presented sufficient circumstantial evidence on that point.

Danny Crozlyn testified as follows: He was Watson's friend. On the day in question he met Watson at Sambo's restaurant in Marion at about 2:30 p.m. They got into Watson's car and started driving around. Watson had a Styrofoam cooler containing seven-ounce bottles of beer, which they drank as they rode. Crozlyn did not know how many bottles were in the cooler or how many either of them drank.

He did not know whether Watson drank anything before they met at Sambo's. They drove to Carbondale and, after driving around Carbondale, drove to the Eagles Lodge at Herrin, arriving at 4:30 p.m. Watson did not appear intoxicated at that time. At the Herrin Eagles they had "a couple of drinks. I don't recall the number." Watson did not appear intoxicated when they left the Herrin Eagles. They drove to KaJo's, defendant's tavern, north of Marion on Route 37. En route from Eagles to KaJo's, Crozlyn picked up his own car. Crozlyn did not believe Watson was intoxicated when they arrived. Once inside KaJo's, Crozlyn and Watson stood at the bar. Crozlyn continued drinking. He did not know whether Watson drank because they did not stay together and Crozlyn did not see him drinking. Watson left about 10 p.m. to 11 p.m., before Crozlyn did.

Watson testified he remembered little of the evening's events. He testified he remembered going into KaJo's but could not recall what happened or what he drank there and remembered nothing of drinking at the Herrin Eagles or of the beer in his car.

An emergency medical technician testified that when she placed Watson in the ambulance at the accident scene he smelled strongly of beer and was in her opinion intoxicated. She testified that to get to Watson in Watson's car, she moved a grocery sack full of beer bottles and that there were at least 20 beer bottles in the sack and strewn around in the car. A police officer testified he administered a breathalyzer test to Watson at 12:09 a.m. on May 10; the reading was .10 percent alcohol content. He testified that aside from the breathalyzer reading, his opinion was that Watson was intoxicated. Defendant testified she knew Watson and he was not in KaJo's on the evening of May 9, 1982. Three other witnesses testified they knew Watson and were at KaJo's that evening and Watson was not there.

The trial court denied defendant's motion for directed verdict at the close of plaintiff's evidence and at the close of all evidence, concluding there was some evidence that defendant caused Watson's intoxication in light of Crozlyn's testimony that Watson was not intoxicated when they arrived at KaJo's and further evidence that Watson was intoxicated at the scene of the collision.

■■■ Circumstantial evidence is the proof of certain facts and circumstances from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind. (*People v. Rhodes* (1981), 85 Ill. 2d 241, 248-49, 422 N.E.2d 605, 608; *Devine v. Delano* (1916), 272 Ill. 166, 179-80, 111 N.E. 742, 748.) Circumstantial evidence is not limited to instances in which the circumstances support only one logical conclusion; it suf-

fices whenever an inference may reasonably be drawn therefrom. (*Mort v. Walter* (1983), 98 Ill. 2d 391, 396, 457 N.E.2d 18, 21.) The sole limitation on the use of circumstantial evidence is that the inferences drawn therefrom must be reasonable. *Pearson v. Ford Motor Co.* (1975), 32 Ill. App. 3d 188, 191. 336 N.E.2d 528, 530.

■▮ In the instant case there was direct evidence that Watson was in defendant's tavern on the date in question and was not intoxicated when he arrived and that he was intoxicated at the time of the wreck. There was no direct evidence that Watson drank anything or became intoxicated at defendant's tavern. However, under the directed verdict standard of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, we find sufficient circumstantial evidence to permit the trier of fact to infer that Watson was in defendant's tavern for a period of hours, that Watson drank alcoholic liquor there, and that he became intoxicated there. On this record it was for the jury to determine whether those inferences or the contrary inferences defendant urged the jury to draw should have been accepted. We find no error in the trial court's refusal to direct a verdict in defendant's favor.

■▮▮ Defendant argues the trial court erred in admitting a photograph of plaintiff and her fiance into evidence. Plaintiff could not claim for loss of consortium, as she was not the decedent's wife. (See *Tjaden v. Moses* (1968), 94 Ill. App. 2d 361, 365, 237 N.E.2d 562, 564-55.) The admission or exclusion of photographs is within the discretion of the trial court. (*Lindsay v. Appleby* (1980), 91 Ill. App. 3d 705, 710, 414 N.E.2d 885, 889.) In general a photograph is admissible if it has a reasonable tendency to prove a material fact in issue. A photograph should be excluded when it is irrelevant or immaterial or when its prejudicial nature outweighs its probative value. (*Rusher v. Smith* (1979), 70 Ill. App. 3d 889, 894, 388 N.E.2d 906, 910.) In this case the jury was aware plaintiff's fiance was killed in the wreck in question. Thus no new information prejudicial to defendant was divulged to the jury via the photograph in question. The photograph was relevant to the issues submitted to the jury in that it demonstrated plaintiff's physical appearance prior to the wreck and thus permitted the jury to assess the extent of her alleged disfigurement. We find no just cause to disturb the trial court's ruling that the photograph be admitted.

Defendant's ultimate argument is that the trial court erred in giving plaintiff's ninth instruction, which stated:

"The Plaintiff claims she was injured and sustained damage and that Defendant violated the Dram Shop Act in the following respects:

a. On May 9, 1982, Defendant owned and operated a certain tavern located in Williamson County, Illinois, called KaJo's Tavern, and was then and there engaged in the business of selling intoxicating liquors.

b. On May 9, 1982, Defendant, in person, and/or by or through her agents in her tavern, sold or gave intoxicating liquors to James M. Watson.

c. At said time and place, James M. Watson drank the intoxicating liquor so sold or given to him by Defendant and/or her agents.

d. Following the sale of said intoxicating liquors as aforesaid, by Defendant and/or her agents in the drinking thereof by James M. Watson became intoxicated.

e. On said date, said James M. Watson, being intoxicated as aforesaid, left said tavern, got into his 1973 Camaro automobile, and drove it to a place on Illinois State Route 37 about 150 yards South of the intersection of Cedar Grove Road, in Williamson County, Illinois, where while driving in the wrong lane of traffic, struck the vehicle driven by Craig M. Chappel, head on, thereby causing the injury of the Plaintiff, Danette D. Hartness.

The Plaintiff further claims that the foregoing was a proximate cause of her injuries.

The Defendant denies that she sold intoxicating liquor to James Watson, denies that James Watson became intoxicated by drinking intoxicating liquor sold by her and denies that James Watson's intoxication was the cause of Plaintiff's claimed injuries.

The Defendant further denies that the Plaintiff was injured to the extent claimed."

Defendant objected to plaintiff's ninth instruction on the ground that it did not fairly state the law in this matter: "The reading of the instruction states it is a violation of the Dram Shop Act among other things to own and operate a tavern, to serve people including James Watson intoxicating liquor, I don't believe those are violations of the Dram Shop Act ***." The court gave the only instruction tendered by defendant, Illinois Pattern Jury Instruction, Civil, No. 2.07 (2d ed. 1971) (hereinafter IPI Civil 2d).

 Defendant argues plaintiff's ninth instruction gave the jury the erroneous impression that it was a violation of the Dramshop Act to own or operate a tavern engaged in the business of selling intoxicating liquors. The test of instructions is whether the instructions

considered as a whole and read as a series are sufficiently clear so as not to mislead and whether they fairly and correctly state the principles of law which pertain to the case. A deficiency in one instruction may be cured by another. (*Ruggiero v. Public Taxi Service, Inc.* (1973), 16 Ill. App. 3d 754, 762, 306 N.E.2d 567, 573.) While plaintiff's ninth instruction was inartfully drafted, no alternative was proposed. (See *Auton v. Logan Landfill, Inc.* (1985), 105 Ill. 2d 537, 549, 475 N.E.2d 817, 821.) The defect in this instruction was "cured" by the giving of plaintiff's eleventh instruction, IPI Civil 2d No. 150.02, which correctly stated that for plaintiff to prevail she must prove (1) Watson was intoxicated at the time of the collision, (2) defendant, his agents or servants sold or gave the intoxicating liquor consumed by Watson, (3) the liquor thus consumed caused the intoxication of Watson, (4) Watson's intoxication was at least one cause of the occurrence in question, and (5) as a result of the occurrence plaintiff was injured.

Defendant also argues that subparagraph "b" of this instruction should not have been given because there was no evidence that defendant or her agents sold or gave Watson intoxicating liquors. Resolution of this issue depends on whether we agree with defendant's contention that there was no evidence that defendant or her agents sold or gave Watson intoxicating liquors. As we noted above, this record includes sufficient circumstantial evidence to present a question of fact for the jury on that point.

Defendant also argues subparagraphs "c" and "d" of plaintiff's ninth instruction erroneously fail to mention the requirement that the plaintiff prove the tavern owner caused the intoxication of the alleged intoxicated person. This is true, but plaintiff's ninth instruction was based on IPI Civil 2d No. 20.01, which merely sets forth the issues made by the pleadings. Plaintiff's eleventh instruction accurately set forth plaintiff's burden of proof and rendered the instructions as a whole correct and not misleading.

Defendant argues the references in subparagraph "e" of plaintiff's ninth instruction to the make of Watson's automobile and the physical details of the accident had no proper purpose in the instruction and improperly evoked sympathy for plaintiff from the jury. We agree with defendant that much of the fact background stated in that instruction was surplusage and need not have been stated. However, none of those facts was not already before the jury. Also, the photographic exhibits depicting the scene of the wreck and plaintiff's injuries (the admissions of which are not challenged on review) were far more prejudicial to defendant's case than any of the unnecessary minutia included in plaintiff's ninth instruction. We find no possibility

of substantial prejudice in this regard.

For the foregoing reasons, the judgment of the circuit court of Williamson County is affirmed.

Affirmed.

KARNS, P.J., concurs.

JUSTICE JONES, dissenting:

I respectfully dissent.

The circumstantial evidence before the jury was insufficient to justify its finding that the defendant *caused* the intoxication of Watson.

Although the majority cites the supreme court case of *Kingston v. Turner*, they pay it scant heed. It must be remembered that it is no longer sufficient to make a case in a dramshop action by a mere showing that an allegedly intoxicated person consumed some intoxicants in a dramshop. The proof must be that the consumption of intoxicants at a particular dramshop caused the intoxication. From *Kingston v. Turner*:

> "Prior to its amendment in 1971, the Act provided that every person who is injured in person or property by an intoxicated person has a right of action against any person who, by selling or giving alcoholic liquor, 'causes the intoxication, *in whole or in part*, of such person.' (Emphasis added.) (Ill. Rev. Stat. 1969, ch. 43, par. 135.) Under this provision recovery could be founded merely on a showing of the resultant intoxication and the consumption of some liquor in defendant's tavern. (See Comment, *The Illinois Dram Shop Act: The Effect of the 1971 Amendment*, 74 U. Ill. L.F. 466, 469 (1974).) The essential element of a plaintiff's case was that injury had been sustained in consequence of the intoxication of another and that the alcoholic liquors served by the defendant dramshop 'contributed in some degree, no matter how slight,' to the intoxication. *Osborn v. Leuffgen* (1942), 381 Ill. 295, 298.
>
> The 1971 amendment to article VI, section 14, eliminated the 'in whole or in part' language from the statute. (See Ill. Rev. Stat. 1983, ch. 43, par. 135.) While the amendment was not designed to alter the 'legislative intent to place the responsibility for damages occasioned by the use of alcohol on those who profit from its sale' (Comment, *The Illinois Dram Shop Act: The Effect of the 1971 Amendment*, 74 U. Ill. L.F. 466, 477

(1974)), it was intended to limit liability and curb the widespread abuse occurring under this provision (see Comment, *The Illinois Dram Shop Act: The Effect of the 1971 Amendment*, 74 U. Ill. L.F. 466, 470 (1974)). This narrowing of liability was accomplished by shifting the emphasis away from the results of the consumption of alcoholic liquors. Recovery may now only be sought against any person who, 'by selling or giving alcoholic liquor, *causes the intoxication*.' (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 43, par. 135.) Under the amended provisions, a defendant must have caused the intoxication and must not merely have furnished a negligible amount of liquor. (*Nelson v. Araiza* (1978), 69 Ill. 2d 534, 540-41.)" *Kingston v. Turner* (1987), 115 Ill. 2d 445, 456-57.

The plaintiff's proof that Watson was caused to be intoxicated by alcoholic liquor he consumed at KaJo's is based solely upon the testimony of his drinking partner Crozlyn that Watson was not intoxicated when they arrived at KaJo's at about 7:30 p.m. and the testimony of other witnesses that Watson was intoxicated following the collision. There was no witness to testify that Watson drank anything at all in KaJo's. Crozlyn did not see him drinking. Four witnesses for defendant, obviously not believed by the jury, testified that either Watson was not at KaJo's on the evening in question or that they did not see him at KaJo's at that time. If Watson had consumed enough alcoholic liquor at KaJo's to have caused his intoxication, it would have been such a notable event that someone would have remembered. But aside from that, other evidence must be factored into the circumstantial evidence considered by the jury. That evidence is that Watson started drinking about five hours before he got to KaJo's and that he continued drinking while riding around in his car with Crozlyn and while at the Herrin Eagles. The emergency medical technician testified that there were upwards of 20 beer bottles in Watson's car following the collision. Also, no one knew what time Watson left KaJo's that evening. Crozlyn said Watson left before he did; he thought it was 10 p.m. to 11 p.m. Watson remembered nothing. It is entirely possible that Watson resumed drinking in his car or that he went to another tavern after leaving KaJo's. If Crozlyn is to be believed when he stated that Watson was not intoxicated when he arrived at KaJo's, why is he not also to be believed when he said that he never saw Watson take a drink at KaJo's? It would be a reasonable assumption to make that Watson became intoxicated as a result of drinking elsewhere than at KaJo's.

I realize that in summarizing the foregoing evidence before the

jury I have indulged in speculation. The point is, though, that the jury also indulged in speculation when it found on the basis of this evidence that Watson's intoxication was *caused* by alcoholic liquor that he consumed at KaJo's. Admittedly, proof that a dramshop had caused the intoxication of a person could be comprised of circumstantial evidence, nevertheless the quality and quantum of the evidence must suffice to meet the burden of proof imposed by law. In this case the circumstantial evidence is insufficient to meet plaintiff's burden of proof.

The sole limitation on the use of circumstantial evidence is that inferences drawn therefrom must be reasonable (*Pearson v. Ford Motor Co.* (1975), 32 Ill. App. 3d 188, 336 N.E.2d 528; *Gearhardt v. American Reinforced Paper Co.* (7th Cir. 1957), 244 F.2d 920) and the conclusion reached must be the only one that could reasonably be drawn (*Ohio Building Safety Vault Co. v. Industrial Board of Illinois* (1917), 277 Ill. 96, 115 N.E. 149; *Heiden v. Gaddbery* (1959), 23 Ill. App. 2d 260, 162 N.E.2d 260). These authorities are reflected in the wording of the jury instruction on circumstantial evidence found in Illinois Pattern Jury Instruction, Civil 2d, No. 1.03:

> "A fact may be proved by circumstantial evidence. Circumstantial evidence consists of proof of facts or circumstances which give rise to a *reasonable* inference of the truth of the facts sought to be proved." (Emphasis added.)

Plaintiff seeks to isolate the statement of Crozlyn that Watson was not intoxicated when they arrived at KaJo's and the testimony of the post-collision witnesses that Watson was intoxicated as being the only factors for consideration by the jury in making their finding that defendant caused Watson's intoxication. As I have related, the evidence, when considered as a whole, does not reasonably give rise to the inference made by the jury. Their verdict was against the manifest weight of the evidence and I accordingly dissent.